**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Gary Aller,

Plaintiff,

v.

Kris Mayes, et al.,

Defendants.

No. CV-25-01875-PHX-DJH

**ORDER**

On May 29, 2026, Plaintiff Gary Aller ("Plaintiff") filed a Complaint against multiple state of Arizona Defendants alleging violations of his civil rights under 42 U.S.C. § 1983. (Doc. 1). Pending before the Court are two fully briefed Motions to Dismiss (Docs. 18 & 19). The first Motion to Dismiss (Doc. 18) was filed by Defendants Attorney General of Arizona Kristin Mayes ("Mayes"), former Attorney General Mark Brnovich ("Brnovich"),[1] United States District Judge of the District of Arizona, Susan Brnovich ("Judge Brnovich"),[2] "Assistant Attorney General 1" ("AAG1"), and "Assistant Attorney General 6" ("AAG 6") (collectively, the "Attorney General Defendants"). The second Motion to Dismiss (Doc. 19) was filed by Defendants Arizona Auditor General

---

[1] Defendant Mark Brnovich has since passed away. (*See* Doc. 29).

[2] Plaintiff acknowledges that Judge Brnovich's conduct is in no way involved in this case. (Doc. 26 at 3 n.2). She was listed solely due to her marital status with Defendant Mark Brnovich; however, "naming the spouses and 'marital communities' is improper as the spouses of individually named defendants are not liable under Section 1983." *Bell v. City of Fife*, 2010 WL 5564047, at *2 (W.D. Wash. 2010). Because Judge Brnovich is not a proper party to this action, she is dismissed as a defendant. Moreover, given her complete lack of involvement in the alleged conduct, the Court sees no reason to recuse. (*See* Doc. 26 at 3 n.2).

Lindsey Perry ("Perry"), Auditor General Employee 1, and Auditor General Employee 2 (collectively, the "Auditor General Defendants").[3]  Both Motions are fully briefed, and the Attorney General Defendants subsequently joined in the Auditor General Defendants' Motion.  (Docs. 25–28, 34).

## I.      Background

This case arises from the state prosecution of Plaintiff, spanning from 2021–2024, based on his involvement in a public-private partnership funding scheme for the financing of Higley Unified School District ("HUSD") middle schools.  (*See* Doc. 1).  In his sprawling Complaint, Plaintiff claims that his First, Fourth, Fifth,[4] and Fourteenth Amendment rights were violated in the time leading up to his indictment, his prosecution, and in his state court civil action.  (*See generally id.*).

On June 6, 2012, Plaintiff and Steven Nielsen "founded a development company, Educational Facilities Development Services, LLC ("EFDS"), an Arizona limited liability company, to pursue multiple projects for district schools and for charter schools[.]"  (*Id.* at ¶ 60).  The same month, HUSD "decided to formally solicit qualified proposers for the private development and management of education facilities to be leased to HUSD," and EFDS prepared and submitted a bid for the project.  (*Id.* at ¶¶ 62–64).  Before bidding on the Project commenced, given his relevant experience in the field, Plaintiff had attended a meeting to consult on alternative means to finance HUSD schools.  (*Id.* at ¶¶ 58–59).  The HUSD Governing Board ultimately awarded EFDS the project on July 12, 2012.

Plaintiff alleges that beginning in 2015 he was investigated for "potentially illegal

---

[3] While former AG Brnovich, Mayes, and Perry are named in the Complaint, the Complaint is brought against several unnamed Defendants and references other anonymous employees.  Here, consistent with the Complaint, those affiliated with the Attorney General's office are labeled Assistant Attorney Generals ("AAG") 1–8, and those affiliated with the Auditor General's office are titled "Auditor General Employee 1" and "Auditor General Employee 2."  (*See generally* Doc. 1).

[4] The Court will assume that the Fifth Amendment is mentioned only to establish the rights applied to the State via the Fourteenth Amendment.  The Fifth Amendment applies solely to the acts of the federal government, *see Johnston v. Earle*, 245 F.2d 793, 796 n.5 (9th Cir. 1957), and all Defendants are state actors.  If Plaintiff did intend to bring a § 1983 claim for violations of the Fifth Amendment against either Attorney General or Auditor General Defendants, such a claim is summarily dismissed as insufficiently pled.  *See*, *e.g.*, *Rodriguez v. Cnty. of Contra Costa*, 2013 WL 5946112, at *4 (N.D. Cal. 2013).

activities associated with the HUSD Project and the ownership of the land on which the new middle schools were being built." (*Id.* at ¶¶ 76, 78–79). On January 5, 2016, "the Auditor General commenced an independent investigation" into the HUSD Project, which culminated in "the Report on Special Investigation dated January 27, 2021." (*Id.* at ¶ 107, 128). Plaintiff claims that this investigation was based on an improper application of the 2015 Arizona Administrative Code ("AAC") to his conduct occurring in 2012. (*Id.* at ¶ 117). Unlike the 2015 version of the relevant AAC rules, "[t]he 2012 version of the AAC rules required an 'appointment' of the procurement advisor by a School Board before that person could be excluded from bidding a school contract." (*Id.* at ¶ 120). Though he was never appointed a procurement advisor, Plaintiff claims that "Defendant Auditor General Employee 1's Procurement Analysis Report issued November 11, 2019, falsely stated, on several occasions, that [Plaintiff] was a procurement advisor despite knowing that [Plaintiff] had not been so appointed." (*Id.* at ¶ 124). These claims were maintained in the Report on Special Investigation, and Plaintiff alleges that his criminal charges were predicated upon the notion that he was a procurement advisor. (*Id.* at ¶¶ 125, 127).

On or around November 7, 2018, "Defendant Brnovich, acting through Defendant AAG 6," issued a Grand Jury subpoena to Plaintiff, requiring him to appear before a Grand Jury on December 4, 2018. (*Id.* at ¶¶ 81–82). Plaintiff alleges the subpoena advised him that revealing the existence of said subpoena to anyone was a criminal offense. (*Id.* at ¶ 85). Therefore, Plaintiff did not consult with an attorney in advance of the interview. He further claims that, at no time during the resulting interview with Defendants Perry and Auditor General Employee 2, was he given *Miranda* warnings. (*Id.* at ¶¶ 91–93). "Only after the interview had been completed did Defendant Auditor General Employee 2 finally inform [Plaintiff] that he was permitted to discuss the interview with an attorney." (*Id.* at ¶ 96).

As a result of the investigation, Plaintiff was indicted on conspiracy and fraud charges in July of 2021. (*Id.* at ¶¶ 150–51). Plaintiff moved for remand in his criminal proceedings "on several grounds including that the State improperly presented the version

of the AAC rules in effect in 2021, rather than the version in effect at the time of the alleged conduct in 2012." (*Id.* at ¶ 152). After remand was granted, Plaintiff was reindicted on the same charges on November 15, 2022. (*Id.* at ¶ 156). Plaintiff alleges that several Attorney General employees were filtered on and off the prosecution of his case, and ultimately, "AAG 8 filed a motion requesting that the case against [Plaintiff] be dismissed because the State concluded it did not have sufficient evidence to convict [Plaintiff][.]" (*Id.* at ¶¶ 174–76). Plaintiff's criminal case was then dismissed with prejudice. (*Id.* at ¶ 176).

Plaintiff's Complaint also states that he has filed a state court case (hereafter the "State Civil Action") against all Defendants based on the same foregoing conduct. (*Id.* at ¶ 186). Plaintiff alleges that he "filed a motion for leave to use the Grand Jury transcripts to vindicate his rights in that action," but "Defendants State and Mayes continue to harm Mr. Aller's constitutional rights in opposing his motion to use the Grand Jury transcripts[.]" (*Id.* at ¶¶ 188–89).

Due to this alleged conduct, Plaintiff filed his federal Complaint on May 29, 2025, alleging four claims under 28 U.S.C. § 1983. (*See id.* at ¶¶ 193–258). Plaintiff's First Cause of Action alleges violations of his First, Fourth, Fifth, and Fourteenth Amendment rights for the "improper subpoena and interview" against Defendants Perry, Mayes, Brnovich, AAG 6, and Auditor General Employee 2. (*Id.* at ¶¶ 193–206). His Second Cause of Action is an alleged violation of the Ex Post Facto Clause and thereby Plaintiff's Fourteenth Amendment rights, and it is brought against Defendants Mayes, Brnovich, Perry, AAG 1, and Auditor General Employee 1. (*Id.* at ¶¶ 207–233). Plaintiff's Third Cause of Action alleges violations of his First and Fourteenth Amendment rights to free speech, free association, and travel against Defendants Mayes, Brnovich, and AAG 1. (*Id.* at ¶¶ 234–41). Finally, in his Fourth Cause of Action, Plaintiff alleges a violation of his Fourteenth Amendment due process rights against Defendant Mayes as he was prevented the use of Grand Jury Transcripts. (*Id.* at ¶¶ 242–58). Attorney General and Auditor General Defendants now move to dismiss the claims brought against each, arguing

generally that they fail as a matter of law. (*See* Docs. 18, 19).

**II.    Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III.    Discussion**

The Attorney General and Auditor General Defendants raise various arguments in support of dismissing Plaintiff's Complaint. While there is some overlap in each Motion's

arguments, for clarity's sake, the Court will first address the Attorney General Defendants' Motion to Dismiss, then the Auditor General Defendants' Motion to Dismiss.

As an initial matter, the Complaint elucidates that Plaintiff filed his State Civil Action in Maricopa County Superior Court based on the same conduct alleged here. A federal court may take judicial notice of filings in related state court actions. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a related state court action where the same plaintiff asserted similar claims). The Court, therefore, will take judicial notice of filings in Plaintiff's State Civil Action as well as his underlying criminal action. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). In doing so, the Court notes that Plaintiff's State Civil Action was dismissed on September 9, 2025, and, according to Plaintiff, this ruling is currently on appeal. (*See* Doc. 18-1 at 55–57; Doc. 26 at 7). Due to this concurrent appeal there exists a possibility of conflicting rulings between Plaintiff's two cases, but the Ninth Circuit has been clear that this concern or the waste of judicial resources is an insufficient basis for the Court to abstain. *See McElroy v. City of Corvallis*, 67 Fed. App'x. 420, at *1 (9th Cir. 2003). Thus, the Court will proceed to the merits of Defendants' contentions.

### A.    Attorney General Defendants' Motion to Dismiss

Attorney General Defendants first argue that absolute immunity is extended to all of their alleged conduct in the Complaint. (Doc. 18 at 8–12). Plaintiff argues, rather succinctly, that the Attorney General Defendants engaged in investigatory conduct, so absolute immunity does not apply. (Doc. 26 at 9). The parties further dispute whether legislative immunity applies to the allegations against Defendant Brnovich concerning the amendment of the AAC rules. (*See* Doc. 18 at 12–13; Doc. 26 at 9–10).

### 1.    Absolute Prosecutorial Immunity

Section 1983 claims against prosecutors are barred by absolute prosecutorial immunity, provided that the claimed violations are based on their activities as legal advocates in criminal proceedings. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341

(2009); *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (concluding that absolute immunity applied with full force to a prosecutor's activities that were "intimately associated with the judicial phase of the criminal process"). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).

In determining whether absolute immunity applies, courts consider "the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal citation and quotation marks omitted). The Supreme Court has held that acts such as a "prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing were protected by absolute immunity[.]" *Id.* at 125–26. Generally, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," are entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "Intent should play no role in the immunity analysis." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986). Put differently, absolute immunity applies to the performance of prosecutorial functions, even if the prosecutor allegedly committed them maliciously or in bad faith. *Imbler*, 424 U.S. at 427.

### a.    Grand Jury Subpoena

Plaintiff claims that "Defendant Brnovich, acting through Defendant AAG 6 sent a letter and Grand Jury subpoena issued by State Grand Jury 83 SGJ 11 to Mr. Aller via e-mail," requiring Plaintiff to "appear before the Grand Jury on December 4, 2018 in order to be questioned by prosecutors." (Doc. 1 at ¶¶ 81–82). "The letter advised [Plaintiff], in mandatory language, that he was not permitted to 'disclose the existence of this subpoena' to anyone because 'such disclosure would be a criminal offense.' " (*Id.* at ¶ 83). And Plaintiff submits that "[t]he letter forbidding [Plaintiff] from discussing the Grand Jury subpoena with anyone was a false statement made to preclude [Plaintiff] from discussing his mandatory appearance with a lawyer and constituted a violation of [Plaintiff's] rights."

(*Id.* at ¶ 86).

The Ninth Circuit considered whether the defendant could claim absolute immunity for the issuance of grand jury subpoenas in *Lacey v. Maricopa County*, 693 F.3d 896, 912–14 (9th Cir. 2012). There, the defendant prosecutor allegedly issued grand jury subpoenas under neither of the circumstances allowed for under Arizona law. *Id.* at 913; *see also* A.R.S. §§ 13-4071(B)(2), (C). Due to this noncompliance, the court determined that absolute immunity did not apply to the subpoenas' issuance, reasoning that "[w]here the prosecutor has side-stepped the judicial process, he has forfeited the protections the law offers to those who work within the process." *Id.* at 914. However, the court noted "[h]ad [the defendant] followed Arizona law, his drafting of the grand jury subpoenas would likely have come within the shield of absolute immunity." *Id.*

Here, there is no allegation that Attorney General Defendants flouted the judicial process or failed to comply with necessary laws in issuing the subpoena. *See Lomeli v. Cnty. of San Diego*, 637 F. Supp. 3d 1046, 1077 (S.D. Cal. 2022) ("[Plaintiff] alleged that he twice received notice of criminal charges issued against him, but makes no allegation that the District Attorney Defendants were operating extrajudicially or in a way that would allow the Court to find they are not entitled to absolute immunity."). Instead, Plaintiff claims that the non-disclosure warning in the subpoena violated his rights and cites *State ex rel. Corbin v. Ybarra*, 777 P.2d 686 (Ariz. 1989) to support the notion that the Arizona Supreme Court has warned that the language was not consistent with Arizona's grand jury secrecy statutes. (*See* Doc. 1 at ¶¶ 86–88). As to *Ybarra*, Plaintiff overstates the import of this case. In dicta and in a footnote, the court mentioned that "the grand jury secrecy statutes, A.R.S. §§ 13–2812 and –2813, do not explicitly support the advice given by the assistant attorney general." *Ybarra*, 777 P.2d at 687 n.2. This comment was made in regard to statements made by an assistant attorney general to the recipient of a subpoena, not any language in the subpoena itself. *Ybarra* did not render any part of the subpoena's admonition unlawful, nor has any other case brought to the Court's attention. What is more, this consideration does not bear on whether absolute immunity applies.

- 8 -

"Prosecutors generally enjoy absolute immunity for their conduct before grand juries," *Lacey*, 693 F.3d at 913, and the Complaint does not establish that the issuance of the grand jury subpoenas here contravened any judicial process. Thus, Attorney General Defendants are entitled to absolute immunity for the issuance of the subpoenas.

**b.    Indictment and Application of 2015 AAC Rule**

"Prosecutors enjoy absolute immunity in their decisions both to prosecute and not to prosecute." *U.S. v. Leon H.*, 365 F.3d 750, 754 (9th Cir. 2004). Therefore, to the extent that Plaintiff's Complaint is premised upon his indictment and/or his prosecution based on an application of the 2015 Rule to his 2012 conduct, Attorney General Defendants are entitled to absolute immunity for such acts. *See*, *e.g.*, *Stacker v. Givens-Davis*, 2024 WL 4427818, at *7 (N.D. Tex. 2024) ("[Plaintiff] sues the prosecutors for prosecuting him on a charge that supposedly violated the Ex Post Facto Clause. Because the claims against the prosecutors are based on actions taken by them in connection with the initiation and prosecution of [the plaintiff's] criminal case, they are entitled to absolute prosecutorial immunity."); *Depineda v. Sims*, 930 F.2d 33, at*1 (10th Cir. 1991) (affirming the dismissal of a "§ 1983 complaint," alleging that "defendant prosecutors proffered perjured testimony at his trial and caused him to be convicted in violation of the constitutional prohibition against ex post facto legislation," based on absolute immunity).

The Court additionally recognizes that Plaintiff's Third Cause of Action alleges violations of his First and Fourteenth Amendment rights to freedom of speech, freedom of association, and right to travel. (Doc. 1 at ¶¶ 234–241). This claim is based entirely on the restrictions placed upon Plaintiff by the court's release order in his criminal proceedings. (*See id.*). Not only are Attorney General Defendants afforded absolute immunity for initiating a criminal case, *see Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir. 2002), but also there is no basis for alleging constitutional violations against state prosecutors for a judge's orders. *See*, *e.g.*, *Underwood v. Mueller*, 1999 WL 111894, at *4 (N.D. Cal. 1999) ("The prosecution is not responsible for [the Judge's] rulings."). Furthermore, stating that Attorney General Defendant's "conduct led to the July 2021 Indictment" is insufficient to

salvage this claim. Because Attorney General Defendants' initiation of Plaintiff's criminal proceedings is absolutely immune, Plaintiff's Third Cause of Action is dismissed with prejudice.

### c.    Grand Jury Transcript

Plaintiff argues that the Attorney General Defendants failed to show that absolute immunity applies to their attempt "to preclude the use of the grand jury transcript already lawfully in Mr. Aller's hands in this matter." (Doc. 26 at 8–9). However, Attorney General Defendants assert that their opposition to Plaintiff's motion seeking to use the transcript falls under the umbrella of absolute immunity. (Doc. 28 at 8–9). The Court agrees.

In his Complaint, Plaintiff alleges that he "filed a motion for leave to use the Grand Jury transcripts to vindicate his rights in [his State Civil Action] and the action herein with the Criminal Presiding Judge who denied the relief sought." (Doc. 1 at ¶ 187). He further claims that Attorney General Defendants "continue to harm Mr. Aller's constitutional rights in opposing his motion to use the Grand Jury transcripts, evidence necessary to satisfy the causative link in his malicious prosecution and falsification claim in the State Civil Action (and herein)." (*Id.* at ¶ 188).

As stated above, prosecutors are entitled to absolute immunity for actions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. And courts have consistently determined that the preparing and filing of a motion or responsive brief constitutes such an action. *Kalina*, 522 U.S. at 129 ("[P]etitioner's activities in connection with the preparation and filing of two of the three charging documents—the information and the motion for an arrest warrant—are protected by absolute immunity."); *Ray v. Lara*, 31 F.4th 692, 699 (9th Cir. 2022) ("We agree that writing the appellate brief on behalf of the government in a direct appeal in a criminal case is 'intimately associated with the judicial phase of the criminal process.' ") (internal citation omitted); *Hearn v. Truesdale*, 2025 WL 3101761, at *3 (D. Idaho 2025) ("[Defendant's] opposed [Plaintiff's] motion to dismiss in their official capacity as prosecutors…[Defendants] therefore have absolute immunity regarding their opposition to

[Plaintiff's] motion to dismiss."). Because Attorney General Defendants' filing of a response in opposition to Plaintiff's motion falls squarely under their advocacy role, they are entitled to prosecutorial immunity for this action. Moreover, as Attorney General Defendants' position against Plaintiff's motion to use the transcripts is the sole basis for Plaintiff's Fourth Cause of Action, this claim is dismissed with prejudice.

### d.    Investigative Conduct

"As the Supreme Court has acknowledged, the distinction between the roles of prosecutor and investigator is not always clear." *Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 711 (9th Cir. 2010) (internal quotations and citation omitted). Generally, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," prosecutorial immunity does not apply to said conduct. *See Buckley*, 509 U.S. at 273.

Plaintiff utilizes the word "investigation" throughout the Complaint. (See, e.g., Doc. 1 at ¶¶ 181–82, 184–85, 195, 213). However, his attempt to avoid prosecutorial immunity by reference to "investigating," an "investigation," or Attorney General Defendants acting as "investigators" is unavailing. Plaintiff fails to allege any "investigatory" conduct undertaken by Attorney General Defendants. *Hubbard v. Sheffield*, 2013 WL 3994458, at *6 (D. Mont. 2013) ("[The plaintiff's] assertion that [the defendant] served as an investigator is conclusory and unsubstantiated—he does not identify any facts indicating that [the defendant] actually performed any investigative functions to develop facts in support of the prosecution against [the plaintiff]."). *C.f. Stanley v. Cnty. of King*, 2025 WL 2427625, at *1 (9th Cir. 2025) (holding that a prosecutor was not entitled to absolute immunity and acted outside the prosecutorial role based on allegations that he (1) questioned "snitches and other witnesses," (2) "shap[ed] the investigation," and (3) coached the detective "to adeptly falsify his probable cause certification.") (internal quotation marks omitted). The only conduct attributable to Attorney General Defendants has been discussed above, and merely stating that a defendant acted as an "investigator" or was "grossly negligent in their investigation" does not suffice

to state a claim. *See Cox v. Ashcroft*, 603 F. Supp. 2d 1261, 1274 (E.D. Cal. 2009) (finding that conclusory allegations that the defendant "was acting as an investigator" were "mere legal conclusion[s]" and were "legally insufficient to defeat the assertion of prosecutorial immunity")

### 2. Legislative Immunity

Plaintiff has alleged that "Defendant Brnovich coordinated with members of the Arizona Legislature to amend the rules of the [AAC] Title 7, Education, Chapter 2. State Board of Education…to prescribe and prohibit, in the future, conduct that had been entirely lawful in 2012." (Doc. 1 at ¶ 9). Attorney General Defendants assert that any such conduct is subject to legislative immunity. (Doc. 18 at 12–13). While acknowledging that contributing to AAC amendments is not unlawful, Plaintiff claims that allegations of this conduct are brought to show "the reason the investigation was undertaken[.]" (Doc. 26 at 9–10). Despite this clarification and because the conduct has been alleged in the Complaint, the Court will briefly address Attorney General Defendants' argument.

"Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.' " *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (internal citation omitted). "Officials who participate in the crafting of, and deliberation concerning, legislation may also be protected by immunity to the extent that their activities are legislative in character or integral to the legislative process." *San Diego Police Officers' Ass'n v. Aguirre*, 2007 WL 9734451, at *25 (S.D. Cal. 2007). Indeed, "[a]cts in direct assistance of legislative activity are protected by absolute legislative immunity." *Id.* at *27. Therefore, to the extent the Complaint alleges that Attorney General Defendants "revised," "amended," or "approved" AAC rule changes, this conduct is entitled to legislative immunity.

In sum, the allegations against the Attorney General Defendants concern solely prosecutorial or legislative conduct, and therefore Attorney General Defendants are entitled to absolute immunity. Thus, Attorney General Defendants are dismissed from this matter. Because there is no further need to consider the claims as to the Attorney General

- 12 -

Defendants, the Court will turn to the arguments raised by the Auditor General Defendants.

### B.    Auditor General Defendants' Motion to Dismiss

Because Plaintiff's Third and Fourth Causes of Action and the Attorney General Defendants have been dismissed, the discussion of the Auditor General Defendants' Motion is limited to Plaintiff's First and Second Cause of Action. Auditor General Defendants raise several arguments for dismissal, first among which is that Plaintiff's claims are time-barred, and they further argue that they are entitled to qualified immunity for their alleged conduct in the Complaint. (Doc. 19 at 2–10).

### 1.    Statute of Limitations

As mentioned, Plaintiff's Complaint was filed on May 29, 2025, bringing two Section 1983 claims against the Auditor General Defendants. (*See* Doc. 1). In his first § 1983 claim, Plaintiff alleges violations of his First, Fourth, Fifth, and Fourteenth Amendment rights for the "improper subpoena and interview." (*See id.* at ¶¶ 193–206). His second § 1983 claim alleges a violation of the Ex Post Facto Clause and resultantly his Fourteenth Amendment rights for the application of the 2015 AAC rules to his 2012 conduct. (*Id.* at ¶¶ 207–233). Auditor General Defendants initially argue that both of Plaintiff's claims are time-barred under the applicable statute of limitations. (Doc. 19 at 2–3). Plaintiff disagrees, arguing that his claims did not begin to accrue until his criminal proceedings terminated favorably and therefore are timely. (Doc. 25 at 7–8).

For § 1983 actions, "courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). "In Arizona, the courts apply a two-year statute of limitations to § 1983 claims." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). When the statute of limitations begins to run is determined by the date on which a plaintiff's claim "accrues." *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). And federal law, not state, determines when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, accrual occurs when the plaintiff has a complete and present

cause of action and may file a suit to obtain relief." *Pouncil*, 704 F.3d at 573–74. "A federal claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* at 574.

First, as to Plaintiff's argument, he asserts that his claims did not begin to accrue until his criminal proceedings terminated favorably. While it is accurate that § 1983 claim for malicious prosecution or a common law malicious prosecution claim would not begin to accrue until a favorable termination in the underlying criminal proceedings, Plaintiff has not brought a malicious prosecution claim here, so his argument as to the accrual date of his claims is unavailing. *See, e.g.*, *Porter v. Los Angeles Cnty.*, 2016 WL 8732091, at *4 n.2 (C.D. Cal. 2016) ("Unlike a section 1983 malicious prosecution claim, a section 1983 retaliatory prosecution claim does not require favorable termination of the underlying prosecution, so its accrual does not depend upon the outcome of the underlying prosecution."). The claims asserted by Plaintiff do not require a favorable termination to be properly alleged. Moreover, Plaintiff's attempt to cast this case as "fundamentally, a malicious prosecution case" is, likewise, unpersuasive. Again, Plaintiff has not brought a malicious prosecution claim, *McGarity v. Sun-Maid Growers of Cali.*, 2024 WL 4370578, at *4 n.4 (S.D. Cal. 2024) (reminding that "[m]otions to dismiss are measured against the operative complaints and not the arguments" in the briefing), and he has offered no basis for applying a malicious prosecution date of accrual to all of his § 1983 claims. Therefore, it is necessary to determine whether Plaintiff's claims are time-barred based on their actual accrual dates.

### a.    First Cause of Action

In Plaintiff's First Cause of Action, he claims that his First, Fourth, and Fifth Amendment rights were violated due to an "improper subpoena and interview." (Doc. 1 at 28). Per the Complaint, Plaintiff received the subpoena on November 7, 2018, and the resultant interview, likewise, occurred in 2018. (*Id.* at ¶¶ 81–82, 95). Plaintiff learned of his alleged harm when, after the interview "Defendant Auditor General Employee 2 finally inform[ed] [Plaintiff] that he was permitted to discuss the interview with an attorney." (*Id.*

at ¶ 96). Even more so, "[i]n December 2018, shortly after the illegal interview outlined above, where he was denied his right to counsel and not read his Miranda rights, Mr. Aller engaged counsel who, after several communications directed at AAG 6 and AAG 1, sent correspondence to Defendant Brnovich through AAG 1, in which counsel outlined, with specificity, the misguided and wrongful nature of the investigation being pursued by Defendant Brnovich and his assistants." (*Id.* at ¶ 100). It is apparent, from the face of the Complaint, that Plaintiff knew or had reason to know of his alleged injuries by the end of 2018. *See Taylor v. Cnty. of Pima*, 2017 WL 6550590 (D. Ariz. 2017), *aff'd in part*, *appeal dismissed in part*, 913 F.3d 930 (9th Cir. 2019) (finding that the plaintiff's § 1983 claim for constitutional harm based on his interrogation were time-barred because "[s]uch claims accrue at the time of the allegedly unconstitutional interrogation"). As this case was filed in 2025, Plaintiff's First Cause of Action is barred by the statute of limitations, and Plaintiff has not demonstrated any circumstances warranting the tolling of the statute of limitations. Plaintiff's First Cause of Action is dismissed with prejudice.

### b.    Second Cause of Action

In his Second Cause of Action, Plaintiff asserts that "[b]y prosecuting Plaintiff in violation of the *ex post facto* provisions of the United States Constitution, Defendants also violated Plaintiff's due process and equal protection rights under the 14th Amendment." (Doc. 1 at ¶ 210). Specifically, Plaintiff alleges that "[t]he 2015 AAC identified in the July 2021 Indictment did not apply to Plaintiff's conduct which took place in 2012," and thus "Defendant's use of the 2015 AAC in the Indictments of Plaintiff, retroactively criminalized Plaintiff's actions in 2012." (*Id.* at ¶¶ 211, 221). The Court again finds that Plaintiff's claim based on violations of the Ex Post Facto Clause is untimely. Based on the allegations, Plaintiff was aware of the injury since his receipt of the 2021 Indictment. *See*, *e.g.*, *Hasbrouck v. Yavapai Cnty.*, 2021 WL 321894, at *11 (D. Ariz. 2021) ("The Court concludes that, at least on this record for motion-to-dismiss purposes, the limitation period began when the challenged ordinance was enforced—and therefore when Plaintiffs became aware of it—rather than when it was passed."); *Sopher v. Wash.*, 2008 WL 4793173, at *7

(D. Or. 2008) ("[Plaintiff's] ex post facto and equal protection claims accrued in 1999, when [Plaintiff] received the Board Review Packet notifying him of the application of the JAM rules to his case. At that time, [Plaintiff] could determine whether the new rules created a more onerous punishment than the previous Matrix System."). Moreover, he claims that during his state criminal proceedings in 2021, the court granted a remand based on the use of the 2015 AAC. (*Id.* at ¶ 153). Thus, Plaintiff has been aware of his injury from the alleged violations of the Ex Post Facto Clause since 2021. Consequently, his claim is time-barred.

### 2. Fabrication of Evidence

Lastly, although Plaintiff's Second Cause of Action is pled only as a violation of the Ex Post Facto Clause in violation of his Fourteenth Amendment rights, it appears to simultaneously attempt to bring a fabrication of evidence claim.[5] (*See id.* at ¶¶ 207–33). While such a claim may not be time-barred as it would accrue upon dismissal, *see Bradford v. Scherschligt*, 803 F.3d 382, 388 (9th Cir. 2015), Plaintiff has failed to allege a violation of a clearly established right.

Qualified immunity "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dunn v. Castro*, 621 F.3d 1196, 1198–99 (9th Cir. 2010) (internal citations and quotation marks omitted). Determining whether qualified immunity applies involves a two-step inquiry: (1) whether the alleged facts establish a violation of plaintiff's constitutional right and (2) whether that right was clearly established at the time the events occurred. *Id.* If the facts alleged fail to show either prong of the inquiry, qualified immunity may be granted. *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010).

---

[5] There is no question that a plaintiff is entitled to bring multiple claims for relief, under various theories, at the pleading stage. *See* Fed. R. Civ. P. 8. However, there is a question as to whether Plaintiff provided sufficient notice to Defendants of the claims against them, if he did intend to bring a fabrication of evidence claim under the same claim alleged as a violation of the Ex Post Facto Clause. The Court further notes that Plaintiff appears to have explicitly brought a "fabrication of evidence" claim in his State Civil Action. (*See* Doc. 18 at 7). Though it may not be necessary to address a claim not properly alleged in the Complaint, for completeness's sake, the Court will do so.

To be sure, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001). However, there is no constitutional right "to have an investigation carried out in a particular way." *Id.* at 1075. "Failing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another." *Id.* at 1076–77. Here, Plaintiff primarily alleges the "conclusion" that he was a "procurement advisor" was false and an improper application of the 2015 AAC rules to his 2012 conduct. (*See* Doc. 1 at ¶¶ 122–25). And the other contentions regarding the Auditor General Defendants' Reports, likewise, involve allegedly incorrect legal analyses or applications of the law. (*See id.* at ¶¶ 139, 143–44, 146).

Even accepting these allegations as true, Plaintiff has failed to show that it was clearly established that erroneous legal conclusions or misapplications of law in investigative reports amount to a deliberate fabrication of evidence. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) ("[N]ot all inaccuracies in an investigative report give rise to a constitutional claim."). Notwithstanding his attempt to construe them as such, Plaintiff points to no actual omissions or misstatements in the Reports, only inaccurate legal conclusions. Plaintiff cites *McGuffin v. Dannels*, 790 F. Supp. 3d 1079 (D. Or. 2025) to buttress his claim that his right was clearly established. Yet, the circumstances in *McGuffin* materially differ from those here. The falsified evidence in *McGuffin* included, amongst other things, misinformation about blood found on a shoe, misstatements about witnessing the suspect driving across a bridge, and false statements that the suspect's vehicle had been sanitized. *See id.* at 1101–07. By contrast, Plaintiff has alleged incorrect conclusions or accusations in the Auditor General Defendants' Reports based on an application of the 2015 AAC rule. *McGuffin* nor any other proffered case support the premise that such errors are a deliberate fabrication of evidence and therefore a violation of a clearly established right.

In fact, other courts agree that "[a]n allegedly incorrect legal conclusion of analysts,

case agents, and prosecutors untethered to an outright fabrication is wholly insufficient. Otherwise, every incorrect legal conclusion incorporated into a report or affidavit would be a fabrication of evidence." *Shapiro v. Goldman*, 2016 WL 4371741, at *20 (S.D.N.Y. 2016), *aff'd*, 696 Fed. App'x. 532 (2d Cir. 2017); *Rich v. LaPointe*, 484 Fed. App'x. 572 (1st Cir. 2012) ("His implicit point is that the Commissioner's misapplication of the penalty statute must have been knowing, with the consequence that relying on its summary procedure must have been a due process violation per se. But if this is [the plaintiff's] point, it is answered by the rule that action by an official based on a mistake of state law is not a due process violation or its equivalent."); *Romero v. Courten*, 2024 WL 4485420, at *10 (E.D.N.Y. 2024) ("[Defendant's] assertion that Plaintiff was in possession of the firearm is, in context, a legal conclusion, which, even if incorrect, cannot form the basis of a fabrication of evidence claim."). Because Plaintiff allegations amount to errors in legal analyses and conclusions in the Auditor General Defendants' Reports and he has failed to demonstrate that such errors violate a clearly established right, the Auditor General Defendants are entitled to qualified immunity for their compilation of the Report of Special Investigation and Procurement Analysis Report. Plaintiff's Second Cause of Action is dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that Attorney General and Auditor General Defendants' Motions to Dismiss (Docs. 18 & 19) are **GRANTED**. The Clerk of Court is kindly directed to terminate this matter.

Dated this 20th day of July, 2026.

Honorable Diane J. Humetewa
United States District Judge